UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LOUANN JOHNSON,

                              Plaintiff,

                                                                                  <u>DECISION AND ORDER</u>

                                                                                  05-CV-6477L

                          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

                              Defendant.
_____

## INTRODUCTION

      Plaintiff, Louann Johnson, brings this action under 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that she is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability benefits.

      Plaintiff originally applied for Social Security disability benefits on April 20, 2004.[2] She listed a disability onset date of January 24, 2003, due to a previous right shoulder injury (Tr. 122-124). Plaintiff's application was initially denied. (Tr. 88, 96-99). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on March 2, 2005 before ALJ Peter V.

---

[1] Plaintiff's complaint names former Commissioner of Social Security Joanne B. Barnhart as the defendant. Michael J. Astrue, the current Commissioner, automatically is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2] "Tr." refers to the transcript of the administrative record.

Train. (Tr. 36-87). ALJ Train determined that plaintiff was not disabled under the Act (Tr. 28-35), and his decision became the final decision of the Commission on August 25, 2005 when the Appeals Council denied plaintiff's request for review. (Tr. 5-7). This appeal followed.

The plaintiff has moved for judgment on the pleadings. (Dkt. #4). The Commissioner has cross-moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. #6). As discussed below, the Commissioner's decision is affirmed.

## FACTUAL BACKGROUND

Plaintiff was born March 31, 1958 and is presently forty-nine years old. She has a high school degree, and her past employment includes work as a cashier, factory worker and general clerical worker. (Tr. 28). It is undisputed that as of the claimed disability onset date of January 24, 2003, plaintiff met the special insured status earnings requirements of the Act, and received Social Security disability insurance benefits during the period from January 1, 2003 through December 31, 2007. (Tr. 118).

Plaintiff began complaining of right shoulder and elbow pain in September 2000, and was diagnosed with tendon inflammation. (Tr. 248). A magnetic resonance imaging scan ("MRI") of her right shoulder on December 18, 2000 revealed compromised subacromial space secondary to severe acromioclavicular joint arthropathy (disease and reduced range of motion in the joint at the top of the shoulder which allows the lifting of the arms over the head), severe supraspinatus and infraspinatus tendinosis and degeneration (damage to the rotator cuff and surrounding muscle), severe subdeltoid and subacromial bursitis (erosion of the bursa, causing undue friction in the shoulder joint upon movement), and large joint effusion. (Tr. 176). An MRI of the right elbow

proved unremarkable. (Tr. 177). Despite plaintiff's having already been placed on light duty at work, her treating orthopedist, Dr. George Pokorny, found that plaintiff's shoulder had proved "resistant to conservative treatment" and that her work activities were aggravating her symptoms, and ordered that plaintiff's duties be further modified. (Tr. 247, 248).

Despite ongoing treatment with physical therapy and nonsteroidal anti-inflammatories, as well as better toleration of her modified light duty work demands (Tr. 242), plaintiff continued to experience shoulder pain. On July 13, 2001, plaintiff underwent arthroscopic surgery on her right shoulder. (Tr. 193-194).

On October 23, 2001, Dr. Pokorny concluded that plaintiff could return to light-duty work with the following restrictions: no use of the right arm above shoulder level, no pushing or pulling, no firm grasping with her right hand, a two-pound weight limit, and no repetitive use of the right upper extremity. (Tr. 231).

Plaintiff continued to undergo physical therapy, but progressed slowly and continued to have a very limited range of motion in her right shoulder. (Tr. 225-230). On February 4, 2002, an MRI of the right shoulder noted adequate subacromial space, a moderate sized joint effusion, moderate to severe supraspinatus tendinosis, and a fresh tear in the supraspinatus shoulder muscle, which Dr. Pokorny opined would require surgery. (Tr. 175, 226).

On April 19, 2002, plaintiff's right shoulder was manipulated under anesthesia. (Tr. 186-188). Plaintiff thereafter reported improvement in her pain level and range of motion, but was ultimately discharged by her physical therapist in July 2002, after the therapist concluded that plaintiff was not progressing any further. (Tr. 220-222).

On January 24, 2003 plaintiff underwent a second arthroscopy to partially release a superior labrum from anterior to posterior ("SLAP") lesion (a tear in the fibrocartilage rimming the shoulder socket) and manipulate the shoulder. (Tr. 179-183).

On February 18, 2003, Dr. Pokorny completed a work-capabilities form specifying that plaintiff could work for up to eight hours a day, five of which could be spent sitting, standing, walking, driving, bending, kneeling, squatting, twisting, and reaching. (Tr. 267). Plaintiff was limited to pushing and pulling to between one and three hours per day, and could not climb. *Id*.

On April 8, 2003, Dr. Pokorny described plaintiff's disability as partial and mild, and certified that she could continue to work under certain restrictions. (Tr. 212). In a second work-capabilities form, he concluded that plaintiff could perform "light-medium" work, defined as infrequently lifting 21-25 pounds, and frequently lifting 11-20 pounds. (Tr. 212). Plaintiff could work for up to ten hours per day, with eight to ten hours of sitting, standing, walking driving, bending, kneeling, squatting, twisting and reaching. Plaintiff was limited to pushing or pulling for one to three hours per day, and could not climb. *Id*.

On July 23, 2003, Dr. Irwin Rosenberg conducted an independent medical examination ("IME") at the behest of the Workers' Compensation Board. (Tr. 259-260). Dr. Rosenberg concluded the plaintiff was mildly to moderately disabled. He opined that plaintiff could perform light-duty work, but could lift no more than twenty pounds and could not raise her right arm above the horizontal position. *Id*.

At a follow-up visit with Dr. Pokorny on February 18, 2004, plaintiff reported improvement in her shoulder pain, stating that she felt no pain when at rest, but experienced pain with increased

activity, for which she took Tylenol.  (Tr. 204).  On March 16, 2004, Dr. Pokorny reported that plaintiff's post-surgery progress was "fair" and had plateaued.  (Tr. 252).

Dr. John Cusick conducted a consultative orthopedic examination of plaintiff on May 13, 2004.  (Tr. 271-274).  Plaintiff reported that because of shoulder pain on motion, she had difficulty with repeated or strenuous use of her right arm.  (Tr. 271).  Nonetheless, plaintiff was not taking any medications, and could engage in some household tasks on a regular basis, depending on how her shoulder felt.  (Tr. 272).  Dr. Cusick concluded that plaintiff was able to sit, stand, walk, lift, handle objects, and travel without any significant limitation, but was moderately limited with respect to strenuous use of her right arm, particularly overhead.  (Tr. 273).

On August 10, 2004, plaintiff was again seen by Dr. Pokorny for left wrist problems and increased discomfort in her right shoulder, not alleviated by over-the-counter medications.  Dr. Pokorny diagnosed persistent pain of the right shoulder and deQuervain's tenosynovitis (inflammation of the sheath surrounding tendons in the wrist, causing pain the wrist, forearm and/or thumb).  He prescribed Vioxx and instructed plaintiff to continue with a home exercise program to strengthen the right shoulder.  Plaintiff was given a thumb splint and assigned exercises for deQuervain's tenosynovitis.  (Tr. 287).

On October 20, 2004, Dr. Pokorny completed a residual functional capacity ("RFC") assessment of plaintiff's ability to perform work-related activities.  (Tr. 279-282).  Dr. Pokorny opined that plaintiff could occasionally lift and carry up to ten pounds with her right arm only.  (Tr. 279).  Plaintiff's ability to sit, stand, climb, balance, stoop, crouch, kneel, crawl and walk was

unlimited. (Tr. 280, 281). Plaintiff could use her right hand occasionally for simple grasping, or continuously for fine manipulation, could occasionally reach and handle, but never push or pull. *Id*.

In a May 15, 2005 report, Dr. Pokorny completed another RFC assessment, and indicated that plaintiff had the following signs and symptoms: tenderness, crepitus, muscle spasms, muscle weakness, chronic fatigue, sensory changes, impaired sleep, reduced grip strength, swelling, atrophy, motor loss, and ability to hold objects. (Tr. 339). Plaintiff's range of motion was significantly limited. Dr. Pokorny noted that plaintiff frequently has pain or other symptoms severe enough to interfere with the attention and concentration required to perform even simple tasks, and needed to take frequent, unscheduled breaks during an eight hour work day. (Tr. 341). Plaintiff could occasionally reach at or below shoulder level with both the right and left upper extremities, never reaching above shoulder level on the right, and could handle objects occasionally with the left hand and frequently with the right. (Tr. 342-343).

A hearing before ALJ Peter V. Train was held on March 2, 2005. (Tr. 59-86, 111). Plaintiff testified that she has frequent flare-ups of pain in her right shoulder for 20 minutes to an hour after using it, and has to shift position after sitting for 45 minutes to an hour, in order to relieve pain in her shoulder. (Tr. 45-50, 58). She wears a splint on her right wrist, and has difficulty grasping items, manipulating buttons and zippers, etc. (Tr. 49). Her shoulder pain interferes with her sleep and often causes her to awaken in the night. (Tr. 52). She cooks and engages in light housework, but does not do any cleaning, mopping, sweeping or vacuuming. Plaintiff currently takes Naproxen twice a day, and is awaiting Workers' Compensation approval to fill a pending prescription for

Vioxx. (Tr. 54-55). During her previous job, she took four or five twenty-minute unscheduled breaks per day to address the pain in her shoulder by applying ice to it. (Tr. 56, 84)

James Ryan, a vocational expert, testified at the hearing and classified plaintiff's past relevant work as exertionally medium and unskilled. (Tr. 59). The ALJ presented a number of hypotheticals, representing various permutations of plaintiff's RFC, and crediting differing portions of the RFC assessments.

The ALJ provided one hypothetical describing and individual with the following RFC: lifting and carrying up to ten pounds occasionally, occasionally using the right, dominant hand for simple grasping, occasionally reaching and handling with the right arm, never pushing or pulling with the right arm, no extension of the right arm above a horizontal position, and limited to unskilled work. (Tr. 62-63). With such an RFC, Dr. Ryan testified that there were other jobs in significant numbers that a person of plaintiff's age, education and past work history could perform, including security worker, receptionist and dispatcher. (Tr. 63 et seq.). When the ALJ added to the hypothetical that the individual would need to frequently change position, Dr. Ryan opined that frequent position changes would not inhibit the individual's ability to perform the three jobs he had identified. *Id*.

## DISCUSSION

### I. Standard for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful activity.' If he is, benefits are denied. If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe'– i.e., one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the 'Listing of Impairments'. . . contained in subpart P, appendix 1, of the regulations. . . . If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied. If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted). It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis. At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

**II.     The ALJ's Decision**

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 24, 2003, because although she had held one position since then, she was provided with substantial assistance and special modifications to her duties. The ALJ concluded that plaintiff had severe impairments, consisting of tenosynovitis (tendon sheath inflammation) of the left wrist and adhesive capsulitis (frozen shoulder) of the right shoulder, that

did not meet or equal a listed impairment. At step four, the ALJ concluded that plaintiff retained the RFC to perform unskilled sedentary work not requiring precise attention to detail and requiring only occasional handling, and could not perform her past relevant work. At step five, the ALJ utilized the Medical-Vocational Grid Rules and heard testimony from a vocational expert, and concluded, based on plaintiff's age, education, and work experience, that plaintiff was not disabled because she retained the RFC to perform "a significant range of sedentary work." (Tr. 28-35).

### III. Standards of Review

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Carter*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot not substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Court must determine if the Commissioner's decision applied the correct

legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504 (quoting *Johnson*, 817 F.2d at 986).

**IV. Plaintiff's Alleged Disability**

I find that the Commissioner's decision regarding plaintiff's disability is not based on legal error and is supported by substantial evidence, and should be affirmed.

    **A.**    **Treating Physician's Opinion**

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating physician, Dr. Pokorny. Specifically, plaintiff objects to the ALJ's rejection of Dr. Pokorny's opinion that plaintiff would require frequent, unscheduled breaks during the work day.

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221 F.3d at 134; *see* 20 C.F.R. § 404.1527(d)(2). In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the

record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. § 404.1527(d). Further, the ALJ must articulate his reasons for assigning the weight that he does accord to a treating physician's opinion. *Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

In the most recent and thorough FRC assessment, Dr. Pokorny stated, without elaboration, that plaintiff needed to take unscheduled breaks "frequently" during an 8-hour workday, that her impairments were likely to produce good days and bad days, and that her pain or other symptoms were severe enough to "frequently" interfere with her attention and concentration in performing simple work tasks. (Tr. 341).

ALJ Train noted that he did not find "[Dr. Pokorny's] comments regarding the claimant's need to take frequent unscheduled breaks during the day" and her difficulty in concentrating to be "supported by the record," and rejected that portion of Dr. Pokorny's RFC analysis.

Although not discussed in significant detail in the ALJ's determination, this finding is supported by substantial evidence. A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors. 29 C.F.R. §404.1527(d)(2). *See Snell v. Apfel*, 177 F.3d 128,1 34 (2d Cir. 1999); *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

I find that the ALJ's determination that Dr. Pokorny's opinion was not entitled to controlling weight is proper, in light of the relevant factors. *See* 20 C.F.R. § 404.1527(d)(2). Although Dr. Pokorny, an orthopedic surgeon, had a well-established treating relationship with the plaintiff over a nearly six-year period and , there is nonetheless no objective medical evidence to support Dr. Pokorny's opinions concerning plaintiff's inability to concentrate and her need for frequent breaks, nor does the Record provide any explanation of when or how these limitations, which are inconsistent with prior medical records chronicling a plateau in plaintiff's condition, as well as with Dr. Pokorny's previous RFC assessments of plaintiff, which mention no such limitations, arose. Specifically, Dr. Pokorny's initial assessment of plaintiff's restrictions in April of 2003 described her limitations as partial and mild and largely limited to difficulties with her right shoulder and left wrist, leaving plaintiff with the ability to sit, stand or walk continuously and interchangeably for 8-10 hours. (Tr. 212, 264). In October of 2004, Dr. Pokorny again opined that plaintiff's ability to sit, stand, climb, balance, stoop, crouch, kneel, crawl and walk was unlimited, as was plaintiff's ability to do the foregoing tasks continuously. (Tr. 280-281). Inexplicably, despite no record of any change in plaintiff's diagnoses or condition, Dr. Pokorny noted seven months later that plaintiff's symptoms would interfere with her ability to concentrate on simple tasks, and that plaintiff would require frequent unscheduled breaks during the workday, when she could leave her post. (Tr. 342-343).

Thus, while the ALJ's explanation of his rejection of Dr. Pokorny's opinion would ideally have been rendered with greater detail, I find that given the lack of medical support for Dr. Pokorny's opinion concerning plaintiff's limitations and the conflicts between Dr. Pokorny's own

RFC assessments, the ALJ's rejection of Dr. Pokorny's final RFC assessment was proper. *See O'Connor v. Chater*, 1998 U.S. App. LEXIS 24514 at *4-*5 (2d Cir. 1998).

### B.     The Commissioner's Burden to Prove That Plaintiff Can Perform Other Work

Plaintiff also alleges that the ALJ's conclusions were not sufficiently supported by vocational expert testimony. At step five of the disability determination, the Commissioner has the burden of proving that there were other jobs that plaintiff could perform, in light of her age, education, work experience, and ability to perform less than the full range of sedentary work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). I find that the Commissioner met that burden when he relied on testimony by a vocational expert to determine that plaintiff was "not disabled."

Although plaintiff objects to the vocational expert's failure to identify the correct DOT numbers for the three jobs he described that plaintiff could perform, I concur with the ALJ's conclusion that the jobs actually described at the hearing are consistent with the plaintiff's residual functional capacity. To invalidate the vocational expert's testimony because he misstated the DOT numbers of the jobs he identified, where there is no apparent dispute as to plaintiff's ability to perform those jobs or their existence in significant numbers in the national economy, would foolishly elevate form over substance. Accordingly, I find that the vocational expert's testimony does comprise substantial evidence that plaintiff can perform other work. *See generally Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

Based on the foregoing, the Commissioner's decision must be affirmed.

**CONCLUSION**

Plaintiff's motion for summary judgment reversing the Commissioner's decision (Dkt. #4) is denied. The Commissioner's cross-motion for summary judgment affirming that decision (Dkt. #6) is granted, and the complaint is dismissed.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 15, 2008.